UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON MILLER, #824688,

        Plaintiff,

v.

UNKNOWN GREGG, et al.,

        Defendants.
_____/

Case No. 2:23-cv-144

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 14.)

Plaintiff — state prisoner Jason Miller — filed suit pursuant to 42 U.S.C. § 1983 on August 4, 2023. (ECF No. 1.) Miller alleged that while he was incarcerated at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan, KCF employees violated his rights under various state and federal laws. At this stage of the case, Miller's First Amendment retaliation claims, Fourteenth Amendment due process claims, and state law claims against Defendants Sergeant (Sgt.) Miller, Corrections Officer (CO) Compton, and Sgt. Tuzinowski for harassing Miles, planting evidence in Miles's cell, and issuing Miles a misconduct ticket remain. (ECF No. 8, PageID.40.)

Defendants now move for summary judgment, asserting that Miller did not properly exhaust his administrative remedies with respect to his federal claims. (ECF No. 14.)  More specifically, Defendants argue that Miller did not pursue any of his claims through Step III of the Michigan Department of Corrections (MDOC) grievance policy, and that he did not raise the issue of retaliation in his misconduct hearing for the alleged retaliatory misconduct ticket, in his request for a rehearing, or in the rehearing.  (ECF No. 15, PageID.66-67.)

In response, Miller attests that he attempted to file numerous Step I grievances, and that he reached out to the grievance coordinator at his facility to inquire as to why his grievances were not being processed, but he never received a response.  (ECF No. 16-2, PageID.103.)  Miller therefore contends that the grievance process was unavailable to him.  And Miller further attests that he raised retaliation in his misconduct hearing as well as his rehearing.  (*Id.*, PageID.104.)

Defendants replied with an affidavit from KCF Grievance Coordinator (GC) Voorhees stating that she never received Miller's alleged grievances or communications related to grievances. (ECF No. 18-2, PageID.119-120.)  Defendants further argue that even if Miller submitted Step I grievance forms, he did not pursue any Step II appeals.   (ECF No. 18, PageID.113.)   MDOC policy specifically provides that prisoners who do not receive timely responses to their grievances or appeals may advance to the next step of the grievance process.

The undersigned respectfully recommends that the Court grant in part and deny in part Defendants' motion for summary judgment based on Miller's failure to

2

exhaust. In the undersigned's opinion, there are genuine issues of material fact bearing on whether Miller made sufficient affirmative efforts to exhaust the grievance process with respect to: (1) his claim that Gregg and Tuzinowski made retaliatory threats against him on February 27, 2023, and (2) his claim that Gregg and Compton conducted a retaliatory shakedown and issued additional retaliatory threats on March 2, 2023. However, in the undersigned's opinion, there are no genuine issues of material fact bearing on whether Miller exhausted: (1) his claim that Tuzinowski conducted a retaliatory shakedown and issued additional retaliatory threats on March 2, 2023, (2) his claim that Defendants conducted a retaliatory strip search and issued a retaliatory misconduct ticket against Miller on March 3, 2023, or (3) his claim that Defendants violated his substantive due process rights by planting evidence on his person. The record demonstrates that he did not. Accordingly, the undersigned recommends that the Court dismiss those claims.

If the Court accepts this recommendation, the following will remain: (1) Miller's claim that Defendants Gregg and Tuzinowski made retaliatory threats against him on February 27, 2023, (2) Miller's claim that Defendants Gregg and Compton conducted a retaliatory shakedown and issued additional retaliatory threats on March 2, 2023, and (3) Miller's state law claims.

## II.    Factual Allegations

As set forth in this Court's September 25, 2023, screening opinion, Miller's verified complaint contains the following factual allegations:

> In his complaint, Plaintiff alleges that he was subjected to a campaign of daily harassment by Defendants Gregg, Tuzinowski, and Compton,

3

which consisted of threats of physical harm and ethnic intimidation, daily shakedowns and searches which left his property damaged and in disarray, and unwarranted strip searches. Plaintiff attempted to address the issue by speaking to these Defendants but was told by Defendants Gregg and Tuzinowski that he had really "f**ked up when he filed those complaints to the Warden's office and the Administrative assistant complaining about their unprofessional conduct and abuse." (*Id.*, PageID.4 (asterisks in original).) Defendants Gregg and Tuzinowski also told him that if he continued to complain, they had the power to set him up, put him in the hole, and even to starve him to death. (*Id.*)

Plaintiff stated that he had already informed family that if something happened to him, Defendants Gregg and Tuzinowski were behind it. Plaintiff stated that he was already serving a sentence of life without parole and that he refused to be intimidated. Plaintiff told Defendants Gregg and Tuzinowski that if they continued to "mess with him," he would file "a lawsuit against them and put a lien against their person and property." (*Id.*) Plaintiff subsequently filed a complaint against Defendants Gregg and Tuzinowski regarding continued shakedowns, destruction of property, and leaving his cell in disarray. (*Id.*)

On February 27, 2023, Plaintiff filed a complaint against Defendants Gregg and Tuzinowski and spoke with the Administrative Assistant, who stated that the conduct of Defendants Gregg and Tuzinowski would be addressed. Plaintiff was told to contact the Administrative Assistant's office if he had any further issues. (*Id.*)

On March 2, 2023, Defendants Gregg, Tuzinowski, and Compton approached Plaintiff while he was walking to the yard and asked for a shakedown. Defendants Gregg, Tuzinowski and Compton asked Plaintiff if he thought they were playing games with him, stating that it was clear Plaintiff had not gotten the message. Defendants Gregg, Tuzinowski, and Compton stated that Plaintiff needed to be taught a lesson about being a snitch because they hated inmates who snitch and place their jobs in jeopardy. (*Id.*) Defendants Gregg, Tuzinowski, and Compton also stated that this was the last time they were going to tell Plaintiff to stop snitching and that the next time would be in segregation. Plaintiff returned to his cell and filed a complaint with the Administrative Assistant's office and the Deputy Warden's office regarding the incident.

On March 3, 2023, Plaintiff was again approached by Defendants Gregg, Tuzinowski, and Compton and was placed in handcuffs and taken to the

control center for a strip search. All three Defendants told Plaintiff that they were done with him and that he would be transferred to the Chippewa Correctional Facility (URF). Defendants Gregg, Tuzinowski, and Compton stated that they had called their friends at URF to properly deal with Plaintiff once he was transferred to Steamboat unit, where Plaintiff would be broken to the point that he would never want to file another grievance or complaint against MDOC staff. Defendants Gregg, Tuzinowski, and Compton told Plaintiff that he was about to see how "much power they had to make an individual disappear." (*Id.*)

Plaintiff was searched and nothing was found on his person or in his clothing. (*Id.*, PageID.5.) Plaintiff states that Defendants Gregg, Tuzinowski, and Compton nonetheless intentionally planted drugs or what appeared to be drugs on his person and issued a false class I substance abuse misconduct. Plaintiff was placed on temporary segregation. Plaintiff requested that the substance be tested by the Michigan State Police Lab and that the Hearings Officer review the control center video. (*Id.*)

Plaintiff was eventually transferred to LCF, where he had a disciplinary hearing on the misconduct on March 14, 2023. Hearings Officer S. Morris (not a Defendant) found Plaintiff guilty without allowing Plaintiff to present any evidence. Plaintiff was given 20-days loss of privileges. Plaintiff subsequently filed a request for rehearing, which was approved by Richard D. Russell (not a Defendant). At the rehearing, Plaintiff was found not guilty and the misconduct was dismissed. (*Id.*)

(ECF No. 8, PageID.32-34.)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones*, 549 U.S. at 218) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to

a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays*

9

*v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct, the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he must then file submit a request for rehearing raising the retaliation issue. *Id.*; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *R. & R. adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

10

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

V.  **Analysis**

Defendants present two distinct arguments in their motion for summary judgment: (1) that Miller did not pursue any of his claims through Step III of the grievance process, and (2) that Miller did not pursue his retaliatory misconduct claim through the misconduct hearing process. (ECF No. 15, PageID.66-67.) The undersigned addresses each of these arguments in turn.

---

[2]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

### a. Grievance Process

Defendants first contend that Miller did not pursue any grievances through Step III of the MDOC's grievance process. (ECF No. 15, PageID.66.) Miller's Step III Grievance Report confirms as much, reflecting that Miller filed no Step III grievance appeals between January 1, 2017, and when Miller filed his complaint in August of 2023. (ECF No. 15-3, PageID.82.)

In response, Miller avers that KCF employees rendered the grievance process unavailable to him. The Sixth Circuit set forth the framework for an exhaustion analysis when plaintiffs allege that the actions of prison staff rendered their administrative remedies unavailable in *Lamb v. Kendrick*, 52 F.4th 286 (6th Cir. 2022). There, the Sixth Circuit explained:

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)]) (internal quotation marks omitted).

*Id.* at 292-93. Because Defendants bear the burden of pleading and proving a plaintiff's failure to exhaust, "if the plaintiff contends that he was prevented from exhausting his remedies," the defendant must "present evidence showing that the plaintiff's ability to exhaust was not hindered." *Id.* at 295 (quoting *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012)).

12

Miller attests that he made the following affirmative efforts to exhaust the MDOC's grievance process:

- On February 27, 2023, Miller authored a grievance against Defendants Gregg and Tuzinowski and placed it in the prison mailbox.
- On March 2, 2023, Miller authored a grievance against Defendants Gregg and Compton and placed it in the prison mailbox.
- On March 3, 2023, Miller sent the KCF Grievance Coordinator a letter complaining that his grievances were not being processed.

(ECF No. 16-2, PageID.103.)

For their part, Defendants say that there is no evidence that Miller submitted the alleged grievances. (ECF No. 18, PageID.112-13.) Indeed, KCF GC Voorhees attests that she never received the alleged grievances, nor the alleged letter inquiring as to their status. (ECF No. 18-2, PageID.119.) And Defendants point out that MDOC policy directs prisoners to file Step II grievance appeals if they do not receive timely responses to their Step I grievance; Miller does not allege that he filed any Step II appeals. (ECF No. 18, PageID.113.)

In the undersigned's opinion, Miller's allegations of thwarting with respect to his February 27, 2023, and March 2, 2023, grievances present a close call. Miller alleges that he submitted Step I grievance forms to the prison mailbox and that he followed up on the forms with a letter to GC Voorhees. Voorhees denies receipt of these documents. But, in the undersigned's opinion, Voorhees's competing affidavit is not "so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v.*

*Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). And while MDOC Policy Directive 03.02.130 at ¶ DD provides that: "A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response[,]" Miller does not simply contend that he never received a Step I response. Rather, he contends that Voorhees never processed his Step I grievances or responded to his communications regarding their status. As such, Miller never received a grievance identification number such that he could file a Step II appeal. Furthermore, GC Voorhees is the same individual responsible for providing grievance appeal forms. MDOC Policy Directive 03.02.130 at ¶ DD.

Ultimately, *Lamb* instructs the Court to consider whether a plaintiff's affirmative efforts to exhaust his claims were sufficient under the circumstances. In the opinion of the undersigned, a reasonable juror could determine, based on Miller's allegations, that he made sufficient affirmative efforts to comply with the grievance process with respect to the claims contained in his February 27, 2023, and March 2, 2023, grievances. But that finding necessitates a discussion of the claims within those grievances.

Miller provides a copy of the Step I grievance he claims to have submitted on February 27, 2023. The pertinent portion of that Step I grievance is shown below:

> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> This grievance is being filed against Sgt. Gregg, Sgt. Tuzinowski based on retaliation motivated by my previous complaints to the Warden, Administrative Assistant concerning there previous death threats, harassment and sending officers to harass and intimidate grievant contrary to P.D.03.03.130(I)(6). On the above violation date grievant was approached by Sgt. Gregg, Tuzinowski who began to threaten grievant stating "you fucked up when you filed those complaints to the Wardens office and Administrative Assistant". They then stated almost in unison "that they'd make sure that officers set me up with false misconducts and have me placed in segregation where they'd kill me and say I hung myself. They then threatened to have me sent to Chippewa where there family and friends where who would place me in steamboat and starved. These claims are multiple related claims not unrelated claims and must be processed.

(ECF No. 16-3, PageID.107.) Taking this grievance into consideration and construing the facts in the light most favorable to Miller, the undersigned finds that there are genuine issues of material fact as to whether Miller made sufficient efforts to exhaust his retaliation claims against Defendants Gregg and Tuzinowski related to their alleged threats against Miller on February 27, 2023, and whether GC Voorhees rendered the grievance process unavailable with respect to those claims.

Miller does not provide a copy of his March 2, 2023, grievance. However, Miller alleged in his verified complaint that Defendants Tuzinowski, Gregg, and Compton conducted a retaliatory shakedown and issued additional retaliatory threats on that date. He attests that he subsequently filed a grievance against Defendants Gregg and Compton. As such, it is the undersigned's opinion that there are genuine issues of material fact with respect to whether Miller made sufficient efforts to exhaust his claims against Gregg and Compton arising out of their March 2, 2023, interaction, and whether GC Voorhees rendered the grievance process unavailable with respect to those claims.

But though the undersigned finds that there are genuine issues of material fact as to the aforementioned claims, the undersigned notes that Miller does not

15

allege to have named Tuzinowski in the March 2, 2023, grievance. Nor does Miller allege to have filed any grievances against Defendants after March 2, 2023. Accordingly, it is undisputed that Miller made no efforts to exhaust claims against Tuzinowski arising after February 27, 2023, or against Gregg and Compton arising after March 2, 2023, via the grievance process.

In sum, the undersigned finds that there are genuine issues of material fact as to whether Miller made sufficient affirmative efforts to exhaust the grievance process with respect to: (1) his claims that Gregg and Tuzinowski made retaliatory threats against him on February 27, 2023, and (2) his claims that Gregg and Compton conducted a retaliatory shakedown and issued additional retaliatory threats on March 2, 2023. The undersigned also finds that there are genuine issues of material fact with respect to whether Grievance Coordinator Voorhees rendered the grievance process unavailable with respect to those claims. The undersigned now turns to whether Miller exhausted any claims through the misconduct hearing process. *Siggers*, 652 F.3d at 693-94.

### b. Misconduct Hearing Process

Defendants aver that Miller did not properly pursue his retaliatory misconduct ticket claim through the misconduct hearing process. (ECF No. 15, PageID.66.) Specifically, Defendants argue that Miller did not raise the issue of retaliation during his misconduct hearing, in his request for rehearing, or in the rehearing. (*Id.*, PageID.66-67.) In response, Miller attests that he did raise retaliation during his

16

hearing and rehearing, but that the hearing officers never documented the issue. (ECF No. 16-2, PageID.103-104.)

The pertinent portion of Miller's request for rehearing is shown below:

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **REQUEST FOR REHEARING**
> CSJ-418 REV. 10/10 4835-3418
>
> **INSTRUCTIONS**
> 1. This form is to be used only to request reconsideration of the decision of a hearing officer on one RECEIVED - MDOC
>    a. Class 1 Misconduct.
>    b. Notice of Intent to Classify to Administrative Segregation.
>    c. Visitor restriction.
>    d. High or very high risk classification.
>    e. Excess legal property hearing.
>    f. Special Education Individual Education Planning Committee (IEPC) hearing.
>    APR 6 2023
>    OFFICE OF LEGAL AFFAIRS
> 2. You MUST attach a copy of the hearing report to this request and, if appealing a misconduct hearing, a copy of the Class 1 Misconduct Report. If they are not attached, this form may be returned to you without a decision. You do not have to include a copy of the hearing investigation packet.
> 3. Submit the completed form to: Hearings Administrator, Department of Corrections, Office of Legal Affairs, P.O. Box 30003, Lansing, Michigan 48909. This form must be received by the Hearings Administrator within 30 calendar days of the date of the decision by the hearing officer.
>
> PRISONER'S NUMBER: 824688
> PRISONER'S NAME: Jason Miller
> INSTITUTION: L.C.F.
> DATE OF MISCONDUCT: 3-03-23
> TYPE OF HEARING (IF MISCONDUCT, LIST CHARGES ALSO):
> DATE OF HEARING: 3-14-23   Class 1 Misconduct 042 Substance Abuse (Other Substance)
>
> Briefly explain why you believe a rehearing should be ordered: The reason the administrative law Judge found me guilty was because I supposedly was in possession of one orange strip with the marking A8 on it. These photographs of this suspected suboxone does not show any marking of A8. The misconduct report has no test results or verification of the substance at all. Also in the hearing handbook page 17 said prescription drugs such as pills, capsules, patches, or film-type medication (such as suboxone) need not to be tested if they are readily identifiable by consultation with licensed medical staff. The misconduct report must also contain a description of the controlled substance. The description, plus test results or verification from medical staff constitutes physical evidence for a charge involving a controlled substance. None of these proceeding were done on the misconduct report or in the hearing report. Pursuant to PD 03.03.105 My Prisoner's due process rights were violated. The decision of ALJ is not supported by competent, materials and substantial evidence on the record as a whole.
>
> SIGNATURE OF PERSON REQUESTING REHEARING: Jason Miller
> DATE: 3-31-23

(*Id.*, PageID.87.)

It is clear that although Miller may have asserted retaliation during his misconduct hearings, Miller raised no such issue in his request for rehearing. As set forth above, to properly exhaust a retaliatory Class I misconduct claim, a prisoner must raise the issue of retaliation at the initial hearing, in the request for rehearing, and at the rehearing. *Siggers*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT. Because Miller's request for a rehearing establishes that Miller did not raise the issue

of retaliation in his request for rehearing, Defendants have met their burden of establishing that there are no genuine issues of material fact and that Miller failed to exhaust his retaliatory misconduct claim.[3]

## VI. Recommendation

The undersigned respectfully recommends that the Court grant in part and deny in part Defendants' motion for summary judgment based on Miller's failure to exhaust. In the undersigned's opinion, there are genuine issues of material fact bearing on whether Miller made sufficient affirmative efforts to exhaust the grievance process with respect to: (1) his claim that Gregg and Tuzinowski made retaliatory threats against him on February 27, 2023, and (2) his claim that Gregg and Compton conducted a retaliatory shakedown and issued additional retaliatory threats on March 2, 2023. However, in the undersigned's opinion, there are no genuine issues of material fact regarding whether Miller exhausted: (1) his claim that Tuzinowski conducted a retaliatory shakedown and issued additional retaliatory threats on March 2, 2023, (2) his claim that Defendants conducted a retaliatory strip search and issued a retaliatory misconduct ticket against Miller on March 3, 2023, or

---

[3] The undersigned notes that MDOC Policy directive 03.02.130 at ¶ J(9)-(11) provides that issues directly related to the misconduct hearing process are non-grievable and must be pursued through the hearing process. As acknowledged by Defendants, this includes claims that a misconduct was issued in order to retaliate against a prisoner for engaging in protected conduct. *Siggers*, 652 F.3d at 693-94. But it is not necessarily limited to such claims. To the extent that Miller's substantive due process claims could be construed as related to the misconduct hearing process under the circumstances of this case, the undersigned notes that Miller did not allege that Defendants planted evidence on him in his request for rehearing. Instead, he complained of procedural due process violations. And Miller's due process claims were previously dismissed from this case. (ECF No. 8, PageID.38.)

(3) his claim that Defendants violated his substantive due process rights by planting evidence on his person. The record demonstrates that he did not. Accordingly, the undersigned recommends that those claims be dismissed.

If the Court accepts this recommendation, the following will remain: (1) Miller's claim that Defendants Gregg and Tuzinowski made retaliatory threats against him on February 27, 2023, (2) Miller's claim that Defendants Gregg and Compton conducted a retaliatory shakedown and issued additional retaliatory threats on March 2, 2023, and (3) Miller's state law claims.

Dated:  February 20, 2024                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).